UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIRSTEN MAXWELL, individually and )
on behalf of all others similarly situated, )
 )
      Plaintiff, ) Case No. 15-cv-10095
  v. )
 ) Judge John W. Darrah
SANOFI-AVENTIS U.S. LLC, )
 )
      Defendant. )

## MEMORANDUM OPINION AND ORDER

On October 6, 2015, Plaintiff Kirsten Maxwell, individually and on behalf of all others similarly situated, filed a class-action suit against Sanofi-Aventis U.S. LLC. The two-count Complaint alleges unjust enrichment and deceptive acts and practices under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1 *et seq.* Defendant filed a Motion to Dismiss [18] the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, Defendant's Motion [18] is granted.

## BACKGROUND

The following facts are drawn from the Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Plaintiff is an individual citizen, residing in Lake Forest, Illinois. (Compl. ¶ 6.) Defendant is a citizen corporation of both Delaware and New Jersey. (*Id*. ¶ 7.)

Defendant manufactures an epinephrine injection called Auvi-Q. (*Id*. ¶ 9.) Epinephrine is used in the emergency treatment of allergic reactions. (*Id*. ¶¶ 11-12.) Auvi-Q is used to treat life-threatening allergic reactions and is intended for immediate self-administration in an emergency. (*Id*. ¶¶ 9, 15.)

1

Auvi-Q is packaged with two active devices and one trainer device . (*Id.* ¶ 9.) Prior to October 28, 2015, Auvi-Q was distributed throughout the United States via wholesalers, pharmacies and hospitals. (*Id.*) Auvi-Q twin packs have a retail price of approximately $480. (*Id.*) Each Auvi-Q contains a single dose of epinephrine for single-use injection designed and marketed to deliver fixed doses of epinephrine. (*Id.* ¶ 18.) Overdosage of epinephrine may result in several serious conditions. (*Id.* ¶¶ 19-21.)

On or about June 17, 2015, Plaintiff purchased a twin pack of Auvi-Q 0.3 mg, bearing lot number 2716517 and an expiration date of August 2016. (*Id.* ¶ 27.) Neither device was activated or otherwise used. (*Id.* ¶ 27.) Plaintiff incurred an out-of-pocket cost of $55.00 for the Auvi-Q, after pharmacy benefits. (*Id.* ¶ 28.)

On or about October 28, 2015, Defendant announced it was recalling all Auvi-Q products currently on the market. (*Id.* ¶ 22.) The products were recalled because Defendant had received 26 reports of inaccurate dosage delivery and/or suspected device malfunctions in the United States and Canada. (*Id.* ¶ 22.) According to Defendant, the products have been found to potentially have inaccurate dosage delivery, which may include a complete failure to deliver the drug. (*Id.* ¶ 24.) Defendant maintains no fatal outcomes were reported among the cases it has discovered thus far. (*Id.* ¶ 22.)

The recall included lot numbers 2299596 through 3037230, which have expiration dates ranging from March 2016 through December 2016. (*Id.* ¶ 23.) Defendant advised patients to immediately contact their healthcare provider to obtain a prescription for an alternative epinephrine auto-injector. (*Id.* ¶ 25.) In the event of a life-threatening allergic reaction, Defendant cautioned patients to only use their Auvi-Q device if another epinephrine auto-injector was not available, and then call 9-1-1 or local medical services. (*Id.* ¶ 25.) Finally, Defendant

told patients to contact their physician or healthcare provider if they experienced any problems that may be related to using Auvi-Q and to report adverse events or side effects to the Federal Drug Administration. (*Id.* ¶ 25.)

On or about October 29, 2015, Defendant announced it would reimburse those patients who incurred out-of-pocket costs to replace their Auvi-Q devices with a different, non-recalled epinephrine auto-injector with proof of purchase. (*Id.* ¶ 26.) Defendant did not offer a refund of the purchase price of the original product or a replacement. (*Id.* ¶ 26.) Auvi-Q is one of three epinephrine auto-injectors available in the U.S. (*Id.* ¶ 26.) The other two are EpiPen and Adrenaclick, both of which are sold by Defendant's competitors at a cost of approximately $550 and $450, respectively. (*Id.* ¶ 26.)

## LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must also provide defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). However, a complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). When ruling on a motion to dismiss

under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Tamayo*, 526 F.3d at 1081.[1]

## ANALYSIS

*Count I: Illinois Consumer Fraud Act*

Plaintiff claims that Defendant's recall program was an unfair practice that violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("IFCA"). Defendant's recall announcement stated:

> Sanofi US will provide reimbursement for out of pocket costs incurred for the purchase of new epinephrine auto-injectors with proof of purchase. In addition, if you purchased Auvi-Q at a cost that exceeds the cost of your replacement device, Sanofi will compensate you for the difference, with proof of original and replacement product purchases.

(Dkt. 19-2).[2]

The ICFA is intended "to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir.2010) (citing *Robinson v.*

---

[1] There is some argument over whether a heightened pleading standard is required. A case that is premised on fraudulent conduct can implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). However, because Plaintiff only alleges an unfair practice and not a deceptive one, the heightened pleading standard is not applicable. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b).").

[2] The language of the recall announcement was not provided in the Complaint but was attached as an exhibit to Defendant's Motion to Dismiss. However, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (internal citations and quotations omitted). Plaintiff's Complaint is based on the recall, and there is no factual dispute as to its terms. Thus, the recall can be examined "without converting the motion to dismiss into a motion for summary judgment." *Id.* at 891-92.

*Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002)). In order to state an ICFA claim, a plaintiff must show: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank*, *N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

To be unfair under the ICFA, a defendant's conduct must: "(1) violate public policy; (2) be so oppressive that the consumer has little choice but to submit; and (3) cause consumers substantial injury." *Siegel*, 612 F.3d at 935. A practice may be unfair even if the claim does not satisfy all three criteria; a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Windy City*, 536 F.3d at 669 (citing *Robinson*, 775 N.E.2d at 961.) Plaintiff argues that Defendant's proposed recall program is unfair because it requires consumers to obtain reimbursement for substitute products but does not provide a replacement of or refund for the amount paid for the recalled product. Defendant contends that Plaintiff's ICFA claim should be dismissed because the Complaint fails to plead an actual injury or allege an unfair practice.

<u>Public Policy</u>

Defendant first argues that Plaintiff's Complaint fails to adequately allege that the recall violated public policy. Plaintiff asserts that the recall program offends public policy and is otherwise unethical, oppressive and unscrupulous. (*Id.* ¶ 48.) However, Plaintiff's conclusory statement that Defendant's conduct offends public policy is insufficient. The recall program does not offend public policy on its face, and the Complaint does not state how it otherwise offends public policy.

5

Oppressive Conduct

Defendant argues that Plaintiff fails to allege Defendant's recall program was oppressive or unscrupulous. Plaintiff asserts that the recall program is unethical, oppressive and unscrupulous because consumers have to purchase another epinephrine injection. "A practice may be considered immoral, unethical, oppressive, or unscrupulous if it deprives the consumer of a meaningful choice or places an unreasonable burden on the consumer." *Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.*, 2012 WL 638765, at *5 (N.D. Ill. Feb. 23, 2012) (citing *W. Ry. Devices Corp. v. Lusida Rubber Prods. Inc.*, 2006 WL 167116, at *5 (N.D. Ill. June 13, 2006)). It is unclear how the recall program deprives consumers of choice. Those who rely on an epinephrine injector must acquire a substitute non-defective product, and the recall program allows for reimbursement for any type of injector. Further, the conduct is not oppressive as Defendant has offered to provide full reimbursement for a new epinephrine injector as well as any difference between the costs of their injector and the replacement injector. The recall program does not deprive the consumer of a meaningful choice or place an unreasonable burden on the consumer.

Substantial Injury

Plaintiff alleges that the recall forces individuals to make an additional out-of-pocket purchase for a new epinephrine injector and submit proof of purchase before Defendant will provide a refund, which she alleges is a substantial injury. Defendant argues that Plaintiff has not alleged any damages, let alone a substantial injury. Because this is a private action, Plaintiff must also show that actual damages were caused by the unfair practice. *See Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002) ("Unlike an action brought by the Attorney General under [ICFA], which does not require that 'any person has in fact been misled, deceived

or damaged[,]' . . . a private cause of action brought under [ICFA] requires proof of 'actual damage.' . . . [and] proof that the damage occurred 'as a result of' the deceptive act or practice." (citations omitted)). Plaintiff has not shown any actual damages as the recall program provides full reimbursement for purchasing a new device. At most, Plaintiff has alleged a time lag between purchasing a new epinephrine injector and Defendant's reimbursing the purchase price. Plaintiff has not alleged that she suffered an "actual pecuniary loss." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014).

Even if the delay in reimbursement was an actual loss, the delay is not a substantial injury. In analyzing whether a plaintiff suffered a substantial injury, the injury must: "(1) be substantial; (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel*, 612 F.3d at 935 (citing *Cheshire Mortg. Service, Inc. v. Montes*, 612 A.2d 1130, 1147 (Conn. 1992)) The potential inconvenience of purchasing another device and submitting proof of purchase does not rise to the level of a substantial injury. The recall program places consumers in the same financial position they would have been in, absent the recall.

<u>Intent</u>

Defendant also argues that Plaintiff has failed to allege intent under the ICFA. A plaintiff must allege "the defendant's intent that the plaintiff rely on the deceptive *or unfair* practice." *Siegel*, 612 F.3d at 934 (emphasis added). Plaintiff appears to argue that intent is not required when alleging an unfair practice, but the statute requires intent for both deceptive and unfair conduct. Plaintiff failed to allege intent for her to rely on the allegedly unfair practice.

Plaintiff has not stated a claim for an unfair practice under the ICFA. Defendant's Motion to Dismiss is granted as to Count I.

7

*Count II: Unjust Enrichment*

In Count II, Plaintiff alleges that Defendant has been unjustly enriched. For an unjust enrichment claim, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678 (Ill. 1989)). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim – and, of course, unjust enrichment will stand or fall with the related claim." *Cleary*, 656 F.3d at 517; *see also Ass'n Benefit Servs v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.")). Plaintiff's unjust enrichment claim is based on the same conduct as the ICFA claim. Because Plaintiff has not shown unfair conduct, Plaintiff cannot show unjust enrichment.

Defendant's Motion to Dismiss is granted as to Count II.

## CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss [18] is granted without prejudice. Plaintiff may file an amended complaint within thirty days of the entry of this Order, if she can do so in compliance with Rule 11.

Date: \_\_\_\_\_July 6, 2016\_\_\_\_\_  _____
JOHN W. DARRAH
United States District Court Judge